AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| In the Matter of the Search of | ) |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No. **1:22-MJ-00071** |
| 3298 Montana Ave, Cincinnati, OH 45211 | ) ) ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | | *Offense Description* |
|---|---|---|
| 21 U.S.C. § 846 | Narcotics Conspiracy | |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brett Stratmann, ATF TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____FaceTime_____ *(specify reliable electronic means)*.

Date: **Jan 28, 2022**

_____
*Judge's signature*

City and state: Cincinnati, Ohio

Hon. Stephanie K. Bowman, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is 3298 Montana Avenue #1, First Floor, Cincinnati, Ohio 45211, further described as a three-story, two-family dwelling, with a detached garage constructed of tan siding with light green trim. The front door to the residence is located on a front porch of the residence. The front door is a tan door with a screen and faces Montana Avenue. There are steps leading from the front walkway to the front porch. There are no visible numbers from the street. The Hamilton County (Ohio) auditor's website lists the parcel identification number for this residence as 2120066000200.

To include any safes or other containers found in the building, locked or unlocked, as well as any storage areas assigned to the residence, garages or outbuildings, front and rear yard area, and any commonly shared storage or access areas. To include any vehicles within the curtilage of the property.



# ATTACHMENT B

## Property to be seized:

All records relating to violations of 21 U.S.C. §§ 841(a)(1), 846 (distribution of and/or possession with the intent to distribute controlled substances and conspiracy to do the same); possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) including the following:

a. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity and/or times when drugs were obtained, transferred, sold, distributed, and/or concealed;

b. Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the illegal sale of drugs;

c. Cellular telephones, digital telephones, car telephones, or other communications devices which evidence participation in a conspiracy to distribute controlled substances.

d. Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

e. Any computer equipment, digital device, magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and any other digital device capable of accessing the internet and capable of being used to commit or further the crimes outline above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes.

f. Financial instruments purchased with currency derived from the sale of controlled substances, including travelers' checks, bonds, stock certificates, cashier's checks, and certificates of deposit;

g. Money counting machines, money wrappers and rubber bands, boxes, bags, briefcases, suitcases, or containers used to carry controlled substances;

16

h. Records, documents, and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds of the sales of controlled substances;

i. Records, items, and documents reflecting travel for the purpose of participating in drug trafficking, including airline tickets, credit card receipts, traveler vouchers, hotel and restaurant receipts, photographs, canceled checks, maps, and written directions to locations;

j. Handguns, shotguns and other firearms, and ammunition, which may be used to facilitate the distribution or possession with intent to distribute controlled substances;

k. Indicia of ownership and use of the vehicles, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, keys and bank account records, registration, title, insurance, and traffic tickets;

l. Photographs or video movies of drug traffickers, their co-conspirators and the property and assets purchased with drug proceeds.

m. Controlled substances, including, but not limited to, methamphetamine and/or marijuana.

n. Drug paraphernalia, which can be used to store, package, weigh, dilute, and ingest controlled substances; equipment pertaining to methamphetamine and/or marijuana, and any other supplies related to the manufacture and distribution of said controlled substances.

o. United States currency, precious metals, jewelry, financial instruments and stocks and bonds; and

p. Any locked or closed containers, to include safes or lockboxes, believed to contain any of the above listed evidence

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of cell phone or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "cell phone" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions,

including desktop cell phones, notebook cell phones, mobile phones, tablets, server cell phones, and network hardware.

The term "storage medium" includes any physical object upon which cell phone data can be recorded. Examples include hard disks, SIM cards and other magnetic media.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE SEARCH OF:
3298 MONTANA AVENUE, CINCINNATI,
OHIO 45211

Case No. _____**1:21-MJ-00071**_____

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Brett Stratmann, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 3298 MONTANA AVENUE, CINCINNATI, OHIO 45211  (the "**SUBJECT PREMISE**"), further described in Attachment A, for the things described in Attachment B.

2.      I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) assigned to the Organized Crime Investigative Squad of the Intelligence Unit of the Cincinnati Police Department (CPD) since 2014.  I have been a police officer with the CPD for more than 25 years.  I have conducted and participated in numerous drug trafficking investigations, illegal use of firearm investigations that were related to murders and felonious assaults, and money laundering investigations during my career, which have resulted in the drug and gun seizures, seizures of large amounts of drug proceeds in the form of U.S. currency, arrests of suspects, their prosecution, and conviction.  I have participated in numerous interviews of individuals involved in the distribution, transportation, and sales of controlled substances, which included discussions regarding how those organizations operate.  Because of this experience, I am familiar with the day-to-day operations of distributors and transporters of controlled substances.  I

am aware that drug traffickers often communicate with their customers, couriers, and/or associates with cellular telephones, or use of multiple telephones or other devices, to avoid detection by law enforcement. I am aware that individuals involved in the illicit distribution of controlled substances nearly always tend to conceal their identities as well as the locations where they live and where drug transactions take place. These individuals are also known to have vehicles, properties, businesses, utilities, and other purchases in the names of other people to conceal their financial transactions and any other association with their drug trafficking activity. Based on my training and experience, I know that drug dealers will often acquire assets and register these assets (including but not limited to cell phones, mobile devices, and/or vehicles) in fictitious names or the names of associates to disguise their ownership. I have also participated in numerous interviews of individuals involved in the illegal possession of firearms. I have participated in the investigation of the offenses referred to above and have reviewed ATF reports and reports prepared by other law enforcement agencies. I have also been involved with the analysis of pen registers, the monitoring of Title III wire intercepts, and the installation and monitoring of tracking devices for vehicles in relation to narcotics investigations. Further, I have been the affiant and obtained numerous Federal warrants for the cell phone data location of fugitives and subjects under investigation by the ATF and the Cincinnati Police Department. I have testified as an expert regarding the drug distribution of drug traffickers in federal District Court in the Southern District of Ohio and the Hamilton County Court of Common Pleas Court, State of Ohio.

3.     In my experiences I have had the opportunity to monitor, listen, and review transcripts pertaining to communications which involved the trafficking of illegal narcotics by persons who attempted to thwart law enforcement by speaking in some sort of coded language. I

have also participated in numerous post arrest and proffer interviews of individuals with knowledge of illegal drug trafficking that had been involved in using coded language and were familiar with day-to-day operations utilized by those involved in the illegal trafficking of narcotics. Through these interviews and other investigative experiences, I have gained knowledge regarding the various methods, techniques, codes, and/or jargon utilized by illegal drug traffickers in the course of conducting their criminal activities.

4.     In addition, I have utilized confidential informants, pen registers, toll records, physical surveillances, and electronic surveillances in the process of my investigations to further my knowledge regarding the operations of those involved in illegal narcotics distribution.  I have further been the affiant on Federal search warrants, have testified in Grand Jury proceedings, and have written reports during the course of conducting investigations.

5.     Through my training, experiences, and communications with other experienced agents and officers who conduct drug investigations, I have become familiar with methods used by drug traffickers to import, transport, store, collect, and safeguard illegal narcotics.  Additionally, my training and experiences have given me knowledge regarding the methods used by drug traffickers to communicate with each other, to launder drug proceeds, and to thwart efforts by law enforcement to detect their illegal activities.   I also have gained intelligence through my experiences, and through conversations with others who have conducted drug-related investigations, regarding methods by which drug traffickers' package, prepare, and distribute narcotics.

6.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PURPOSE OF THE AFFIDAVIT

7.      This affidavit is submitted in support of an application for search warrants for evidence, contraband, fruits, and instrumentalities of crime, persons to be arrested, property used or intended to be used in the commission of crime(s) and search and seizure of digital devices located at the subject premises and surrounding curtilage, related to evidence of a conspiracy to possess with intent to distribute and distribute fentanyl and/or other controlled substances in violation of 21 U.S.C. § 846; possession with intent to distribute the same in violation of 21 U.S.C. § 841(a)(1).

8.      For all the reasons articulated below, I have probable cause to believe that evidence related to these crimes will be located within the **SUBJECT PREMISE**, which is more fully described in Attachment B.

## PROBABLE CAUSE

**A. Cincinnati Police Department officers and ATF are investigating Arik SMITH and others for drug trafficking in Cincinnati, Ohio.**

9.      On October 8, 2021, District Five Violent Crime Squad with the assistance of the Cincinnati SWAT team executed a search warrant at 880 Lafayette Avenue #17 Cincinnati, Ohio, which included the search of multiple vehicles associated with that address.  The search warrant was a result of the investigation of the drug trafficking activities of Michael MILLER, Zion MILLER, Armaunnie COSTON, Andre HOUSTON, and additional co-conspirators. Michael MILLER was taken into police custody during the search warrant.  During the search of the location along with the vehicles associated to Michael MILLER, officers recovered four

semi-automatic handguns (Ruger LCP .380 serial number 371323858, SCCY CPX-2 9mm serial number C100358, SCCY CPX-2 9mm serial number 661780, and a Master-Piece Arms MPA Defender 9mm serial number FX01562) from Michael MILLER's bedroom. Officers also recovered multiple distribution quantities of various illegal drugs, multiple blenders, and items used to prepare and package drugs. During the investigation, Markita STONE identified as the girlfriend of Michael MILLER and she was also present in the apartment searched by police.

10.     Following Michael MILLER's arrest, District Five VCS officers began to monitor recorded jail calls made by Michael MILLER from the Hamilton County Justice Center. On recorded jail calls, officers heard Michael MILLER direct his brother Zion MILLER to keep the phone number used by Michael MILLER's drug customers up and running. Michael MILLER further directed Zion MILLER to work the drug phone in the morning hours and have "Monnie" work the phone in evening to effectively continuing Michael MILLER's drug trafficking operations from jail. Officers also identified Markita STONE on recorded jail calls and learned that STONE was communicating with Michael MILLER and assisting him with the on-going conspiracy to distribute drugs.

11.     On Monday, October 25, 2021, at approximately 4:00 p.m., Cincinnati Police Crime Gun Intelligence Center Unit (CGIC) conducted surveillance in an unmarked police vehicle at the BP Gas Station located at 2110 Montana Avenue. Officers saw a red Jeep Compass bearing Georgia license plate CLS2370 parked at a gas pump. There were four male black occupants inside the Jeep. Officers saw the front seat passenger conducting multiple hand-to-hand drug transactions with other individuals that were in the lot. After several minutes, officers saw the Jeep leave the parking lot. When uniformed officers attempted to stop the Jeep in a

marked police cruiser, the driver failed to stop, and a short vehicle pursuit ensued. During the pursuit, all occupants of the vehicle jumped out and fled on foot. One officer saw COSTON walking behind 2336 Buddleia Court a few minutes after fleeing from the vehicle. Officers wearing plain clothes wearing a tactical vest with "POLICE" clearly marked told COSTON to stop, but he refused and fled on foot. After a short foot pursuit, COSTON was apprehended and 5 Percocet pills and $2,286 in U.S. currency recovered from his pants pocket along. COSTON also had two iPhones on his person. Andre HOUSTON, another occupant, was apprehended from the vehicle. The other two occupants were not found by police. Police recovered four iPhones from the vehicle and a fifth iPhone on the ground near the vehicle. Search warrants were executed on the five phones. One of the phones recovered was the 8303 drug phone.

12.    On October 25, 2021, in recorded jail calls, STONE told Michael MILLER about the pursuit and explained that Zion MILLER crashed the car. STONE also advised Michael MILLER that she was at Tina's Carryout getting new cellular phones for Zion MILLER because he lost his phones in the pursuit with police. After October 25, 2021, STONE continued to communicate with Michael MILLER in recorded jail calls. Review of recorded jail calls showed that STONE continued to set up the re-activation of phone numbers to new devices after police action. Also, Michael MILLER directed Markita STONE to transfer money and narcotics by meeting with co-conspirators. Furthermore, STONE continued to make three-way phone calls with co-conspirators while talking to Michael MILLER.

13.    On December 8, 2021, officers from the District Three Violent Crimes Squad executed a search warrant at 2383 Williamsburg Drive with the assistance of the Cincinnati Police SWAT Team. During the execution of the search warrant, Zion MILLER fled out of the

back door of the target location when told to stop by police and was taken into custody several addresses away. Zion MILLER had $9783 in U.S. currency on his person in pants pocket. Amongst the currency recovered was $20 that was used during a prior controlled buy with Zion MILLER the week of December 1, 2021. CPD SWAT secured Marquise FOUNTAIN, Chrishayla CARTER (leaser of apartment), and Artaz Stanford in the residence. Inside of the apartment, officers recovered approximately 82 grams of fentanyl, 73 grams of methamphetamine, and 10 grams of crack cocaine. Officers also found evidence of drug trafficking such as blenders, digital scales, baggies, "cut" used to mix with the drugs, and several cell phones. Officers recovered a Glock model 17, 9mm serial number BKUE976 loaded with seventeen rounds and a stolen Glock model 21, .45 serial number SDG871 with fourteen rounds. Both semiautomatic handguns were found in the kitchen near the recovered drugs and drug trafficking paraphernalia. Officers recovered 3.758 grams of fentanyl from FOUNTAIN's person.

14.     While executing the search warrant, Markita STONE arrived at 2383 Williamsburg Drive in a vehicle. Officers attempted to speak to STONE. STONE was on the phone and advised the driver to leave the area without speaking to police. Upon review of Michael MILLER's calls from the Hamilton County Justice Center officers discovered that STONE was on the phone with Michael MILLER. Therefore, I believe that STONE was using cellular devices to communicate with Michael MILLER during jail calls. Officers also learned from jail calls that COSTON had arrived at 2383 Williamsburg Drive as the SWAT team was on scene and COSTON left the area. Michael MILLER called COSTON at from jail and told him to get the new phones from STONE. STONE confirmed with Michael MILLER that she has

purchased the new phones ("lick phone 513-652-8303 and Zion MILLER's phone 513-773-6692) from Tina's Carryout store located in Over the Rhine. In a recorded call, STONE also contacted Arik SMITH on an additional line while on the phone with Michael MILLER. During this call, MILLER asked Arik SMITH if he can handle the phones and SMITH said that he can. Markita STONE delivered the new phones with the "lick phone" numbers re-ported to the new devices. STONE and Michael MILLER discussed talking on a different phone to avoid detection of law enforcement who maybe monitoring jail calls.

**B. SMITH and others used SUBJECT PREMISE to sell drugs to a confidential informant.**

15.     On November 1, 2021, Cincinnati Police District Three VCS officers met with a confidential and reliable informant (CI-1) for the purpose of making a call to Zion MILLER for the purchase of $40.00 of fentanyl. CI-1 called target on the 8303 phone and arranged to purchase fentanyl from MILLER at an unknown address. CI-1 has provided information regarding drug-related offenses to law enforcement in the recent past that has proven reliable. CI-1 has previously been convicted of drug trafficking and theft and is cooperating for financial consideration. Police searched CI-1 and his/her vehicle for contraband and unauthorized currency and found nothing. CI-1 was issued $40.00 of recorded U.S. Currency and recording devices. During this time, officers established surveillance in the Westwood area. The target instructed CI-1 to get off on the Hopple Street exit. While under constant surveillance, and after multiple calls to Zion MILLER for updated directions, CI-1 drove to the designated meeting location, which was identified as 3298 Montana Avenue (**SUBJECT PREMISE**). CI-1 parked his/her vehicle in front of the **SUBJECT PREMISE** and called Zion MILLER who instructed CI-1 to pull into the drive of **SUBJECT PREMISE**. Arik SMITH was observed standing on the

driveway of **SUBJECT PREMISE**.  Arik SMITH then walked back inside the residence and was observed exiting the rear of 3298 Montana Avenue and walked to the CI-1'S vehicle.  There Arik SMITH gave CI-1 a quantity of fentanyl in exchange for U.S. Currency. Following the controlled buy and while under constant surveillance, officers followed CI-1 to a designated meeting location.  Officers met with CI-1 and recovered the purchased fentanyl and the recording devices. Officers searched CI-2 for further contraband and /or unauthorized currency and found nothing.  CI-1 identified Arik SMITH as the person who sold him/her the fentanyl from an Ohio Bureau of Motor Vehicles photograph. CI-1 stated SMITH walked out of the rear door of 3298 Montana Avenue, met CI-1 in the driveway, and walked back into the residence in the same rear door. SMITH then exited the residence again and walked to the driver's side of the CI-1's vehicle, SMITH then gave the CI-1 fentanyl through the driver's side window in exchange for $40.00.  The fentanyl was tested at the Hamilton County Crime Laboratory and tested positive as fentanyl.

16.    On January 14, 2022, officers from Cincinnati Police District Three VCS met with CI-1 for the purpose of making a call to Arik SMITH for the purchase of $40.00 of fentanyl. CI-1 called SMITH at 513-652-8303 and arranged to purchase fentanyl from SMITH at an unknown address. Police searched CI-1 and his/her vehicle for contraband and unauthorized currency and found nothing.  CI-1 was issued $40.00 of recorded U.S. Currency and recording devices.  During this time, police established surveillance in the Westwood area. CI-1 was instructed to go to "Northside" (Northside Avenue and Grand Avenue), and that CI-1 would then receive further instruction on where to meet SMITH. SMITH later instructed CI-1 to go to "Montana" via text (3298 Montana Avenue). While under constant surveillance, CI-1 drove to

the designated meeting location at **SUBJECT PREMISE**. CI-1 arrived and pulled his/her

vehicle in front of the **SUBJECT PREMISE**. CI-1 called SMITH and advised he/she was there.

CI-1 was then instructed to walk up the driveway of **SUBJECT PREMISE** and go to the rear

door. Arik SMITH was observed opening the rear door at **SUBJECT PREMISE**, there Arik

SMITH gave CI-1 a quantity of fentanyl in exchange for U.S Currency. While under constant

surveillance, officers followed CI-1 back to a predesignated meeting location, met CI-1, and

recovered the purchased fentanyl and the recording devices. Officers searched CI-1 for further

contraband and /or unauthorized currency and found nothing. CI-1 identified Arik SMITH as the

person who sold him/her the fentanyl from an Ohio Bureau of Motor Vehicles photograph. CI-1

stated SMITH opened the rear door of **SUBJECT PREMISE**, he was in the kitchen with

another unknown male, SMITH then gave CI-1 fentanyl through the opening of the door in

exchange for $40.00. After the transaction was complete, CI-1 left the **SUBJECT PREMISE**.

The fentanyl SMITH sold CI-1 was tested at the Hamilton County Crime Laboratory and tested

positive as fentanyl.

      17.    On January 21, 2022, officers from Cincinnati Police District Three VCS met with

CI-1 for the purpose of making a call to Arik SMITH for the purchase of $40.00 of fentanyl. CI-

1 called SMITH at 513-652-8303 phone number and arranged to purchase fentanyl from SMITH

at an unknown address. Officers searched CI-1 and his/her vehicle for contraband and

unauthorized currency and found nothing CI-1 was issued $40.00 of recorded U.S. Currency and

recording devices. During this time, police established surveillance near the **SUBJECT**

**PREMISE.** CI-1 was instructed to go to Montana Avenue. While under constant surveillance by

officers, CI-1 parked on the street near the **SUBJECT PREMISE** and walked up the driveway of

the residence. CI-1 walked around the rear of the residence and knocked on the backdoor. An unknown subject answered the door and asked what CI-1 wanted. CI-1 told the unidentified subject what he/she wanted. The subject shut the door and returned a short time later and conducted the hand-to-hand drug transaction for fentanyl in exchange for U.S. Currency. While under constant surveillance, officers followed CI-1 back to a predesignated meeting location. Officers met with CI-1 and recovered the purchased fentanyl and the recording devices. Police searched CI-1 for further contraband and /or unauthorized currency and found nothing. The suspected fentanyl was taken to the Hamilton County Crime Laboratory and test results are pending.

18.     I believe, based on my training and experience, and my participation in this investigation, that SMITH and others are using **SUBJECT PREMISE** to store and distribute controlled substances.

## ITEMS COMMON TO SEARCH AND SEIZURE

19.     Based upon my training and experience, my participation in this investigation, and other drug trafficking investigations, I have reason to believe that:

a.  drug traffickers often place assets in names other than their own to avoid detection of these assets by government and law enforcement agencies;

b.  drug traffickers often place assets in names of business/corporate entities as nominee title holders in order to avoid detection of these assets by government and law enforcement agencies; even though these assets are placed in the names of other persons or entities, the drug traffickers continue to use these assets and exercise dominion and control over them;

c.  drug traffickers must maintain and/or have quick access to large amounts of United States currency or other liquid assets in order to maintain and finance their ongoing

drug business;

d.  drug traffickers often maintain money counting machines, money wrappers and rubber bands, boxes, bags, brief cases, suitcases, or containers used to carry drug proceeds and/or controlled substances;

e.  drug traffickers often maintain in their residences and/or business establishments records relating to the transportation, ordering, sale and distribution of controlled substances and the outstanding debts and collections from controlled substances that have been distributed including some or all of the following written books, records, receipts, diaries, notes, ledgers, airline tickets, cashier's checks, money orders and other papers (i.e. bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the illegal sale of drugs);

f.  drug traffickers commonly use cellular phones to communicate with other members of the DTO, narcotics source of supply(s), and/or narcotics customers in furtherance of violations of the Uniform Controlled Substances Act;

g.  drug traffickers commonly provide illegal narcotics to their organization on consignment sale to their customers, who subsequently pay for the drugs after reselling said drugs. Therefore, the above-mentioned books, records, receipts, notes, ledgers, etc., will be secured by the drug traffickers within their residences and/or their businesses for their ready access for the purpose of determining drug debts and collecting monies derived from the sale of drugs;

h.  drug traffickers commonly conceal contraband, proceeds of drug transactions, records of these transactions, and records reflecting names, nicknames, addresses and telephone numbers of drug associates within their residence and/or place of business, their business vehicles, or the curtilage of their residence or business for ready access and to hide them from law enforcement agencies;

i.  drug traffickers commonly will attempt to legitimize the profits from illegal drug transactions by using domestic banks and their attendant services (i.e., safe deposit boxes, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts), and evidence of this includes documents like stock certificates, bonds, deposit certificates, and travelers checks;

j.  drug traffickers often have photographs or video movies of themselves, their co-

conspirators and the property and assets purchased with drug proceeds. These photographs and video movies are normally in the drug traffickers possession, their residence and/or their place of business;

k. drug traffickers' methods of transporting drugs include but are not limited to: commercial airlines, private motor vehicles, and government and contract mail carriers. I know that the vehicles, residences, or business locations of drug traffickers will often contain records of drug-related travel. These records may include airline ticket receipts, credit card receipts, traveler vouchers, hotel and restaurant receipts, photographs, canceled checks, maps, and written directions to locations rental car receipts and luggage tags reflecting points of travel;

l. drug traffickers commonly have firearms in their possession (on their person, at their residence, and/or their business) including but not limited to handguns, rifles, shotguns and automatic weapons. These firearms are most often used and/or maintained in order to protect and secure a drug trafficker's property or manufacturing operation;

m. it is common for drug traffickers to secrete in their vehicles items identified in the above paragraphs;

n. drug traffickers will often accumulate and maintain substantial amounts of drug proceeds, specifically currency, over a period of years, so that the proceeds can be used in later years for personal asset acquisitions and/or expenditures during periods when a drug trafficker is not distributing drugs;

o. drug traffickers commonly will maintain residence(s) separate from their primary residence to serve as "safe houses" where the traffickers may stay for periods of time; I know that these residences which may be occupied by other conspirators or associates may contain elements of the traffickers drug crimes to include all items noted above;

p. drug traffickers commonly have evidence of purchases of goods used in the manufacture of controlled substances secreted in their residences, businesses, or vehicles; and

q. drug traffickers commonly secret in their residences and/or places of business, over a period of years, items such as those identified in the above paragraphs.

### **CONCLUSION**

20.     I believe the facts contained within this affidavit support probable cause to believe

that SMITH and others are involved in a conspiracy to possess and distribute controlled substances

to include fentanyl. Based on my training, experience, discussions with other law enforcement

officers/agents, and the information contained herein, I believe that probable causes exists that the

items listed in **Attachment B** as evidence, contraband, fruits and instrumentalities of crime,

persons to be arrested, property used or intended to be used in the commission of crime(s), related

to evidence of a conspiracy to possess with intent to distribute, and distribute cocaine and fentanyl,

will be found at the locations identified in **Attachment A.**

21.     I further request that the Court order that all papers in support of this application,

including the affidavit and search warrant and the attachments, be sealed until further order of the

Court. These documents discuss an ongoing criminal investigation that is neither public nor known

to all of the targets of the investigation. Accordingly, there is probable cause to seal these

documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

BRETT STRATMANN
Task Force Officer (TFO)
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Attested to by the Applicant in accordance with Fed. R. Crim. P. 4.1
this _28_ day of January, 2022. via electronic means, specifically Facetime video.

HON. STEPHANIE K.  BOWMAN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

*Property to be searched*

The property to be searched is 3298 Montana Avenue #1, First Floor, Cincinnati, Ohio 45211, further described as a three-story, two-family dwelling, with a detached garage constructed of tan siding with light green trim. The front door to the residence is located on a front porch of the residence. The front door is a tan door with a screen and faces Montana Avenue. There are steps leading from the front walkway to the front porch. There are no visible numbers from the street. The Hamilton County (Ohio) auditor's website lists the parcel identification number for this residence as 2120066000200.

To include any safes or other containers found in the building, locked or unlocked, as well as any storage areas assigned to the residence, garages or outbuildings, front and rear yard area, and any commonly shared storage or access areas. To include any vehicles within the curtilage of the property.



# ATTACHMENT B

## Property to be seized:

All records relating to violations of 21 U.S.C. §§ 841(a)(1), 846 (distribution of and/or possession with the intent to distribute controlled substances and conspiracy to do the same); possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) including the following:

a. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity and/or times when drugs were obtained, transferred, sold, distributed, and/or concealed;

b. Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the illegal sale of drugs;

c. Cellular telephones, digital telephones, car telephones, or other communications devices which evidence participation in a conspiracy to distribute controlled substances.

d. Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

e. Any computer equipment, digital device, magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and any other digital device capable of accessing the internet and capable of being used to commit or further the crimes outline above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes.

f. Financial instruments purchased with currency derived from the sale of controlled substances, including travelers' checks, bonds, stock certificates, cashier's checks, and certificates of deposit;

g. Money counting machines, money wrappers and rubber bands, boxes, bags, briefcases, suitcases, or containers used to carry controlled substances;

16

h. Records, documents, and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds of the sales of controlled substances;

i. Records, items, and documents reflecting travel for the purpose of participating in drug trafficking, including airline tickets, credit card receipts, traveler vouchers, hotel and restaurant receipts, photographs, canceled checks, maps, and written directions to locations;

j. Handguns, shotguns and other firearms, and ammunition, which may be used to facilitate the distribution or possession with intent to distribute controlled substances;

k. Indicia of ownership and use of the vehicles, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, keys and bank account records, registration, title, insurance, and traffic tickets;

l. Photographs or video movies of drug traffickers, their co-conspirators and the property and assets purchased with drug proceeds.

m. Controlled substances, including, but not limited to, methamphetamine and/or marijuana.

n. Drug paraphernalia, which can be used to store, package, weigh, dilute, and ingest controlled substances; equipment pertaining to methamphetamine and/or marijuana, and any other supplies related to the manufacture and distribution of said controlled substances.

o. United States currency, precious metals, jewelry, financial instruments and stocks and bonds; and

p. Any locked or closed containers, to include safes or lockboxes, believed to contain any of the above listed evidence

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of cell phone or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "cell phone" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions,

including desktop cell phones, notebook cell phones, mobile phones, tablets, server cell phones, and network hardware.

The term "storage medium" includes any physical object upon which cell phone data can be recorded.  Examples include hard disks, SIM cards and other magnetic media.